IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY LOPEZ,<br>    *Plaintiff(s)*,<br>v.<br>ILLINOIS DEPARTMENT OF<br>HEALTCHARE AND FAMILY<br>SERVICES, *et al.*,<br>    *Defendant(s)*. | No. 25 CV 457<br>Hon. John J. Tharp, Jr. |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Kimberly Lopez, *pro se*, respectfully submits this Memorandum in Opposition to Defendants' Motions to Dismiss (Dkt. Nos. 16 and 17) and states as follows:

**I. INTRODUCTION**

As a *pro se* litigant, Plaintiff's pleadings must be construed liberally. The Supreme Court has consistently held that *pro se* complaints are to be "held to less stringent standards than formal pleadings drafted by lawyers." See *Haines v. Kerner*, 404 U.S. 519 (1972); and *Erickson v. Pardus*, 551 U.S. 89 (2007). Plaintiff, Kimberly Lopez, respectfully requests that the Court evaluate her claims with this standard in mind and permit the case to proceed to discovery on the constitutional and statutory issues properly presented. Plaintiff respectfully submits this memorandum in opposition to Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendants seek dismissal of this action on grounds of sovereign immunity, lack of subject matter jurisdiction, and failure to state a claim. Their motions disregard the record, misrepresent Plaintiff's constitutional claims, and rely on flawed assumptions that Plaintiff's underlying allegations stem from a domestic-relations dispute. In fact, Plaintiff has demonstrated a systemic pattern of due process violations, excessive and unlawful fines, retaliatory license suspension, and fraudulent child support enforcement actions devoid of legal basis. Defendants failed to follow their own statutes, rules, and guidelines (See *Exhibit* 8).

This is not a challenge to a state court judgment. This is a § 1983 and ADA action addressing unconstitutional and unauthorized enforcement conduct by State actors, specifically the unlawful suspension of professional licenses without notice, hearing, or jurisdiction, and retaliatory administrative action that caused federal and interstate harm.

In *Schware v. Board of Bar Examiners*, 353 U.S. 232 (1957), the Supreme Court held that a state cannot exclude a person from a licensed profession unless its reasons are rationally connected to the applicant's present fitness and are applied in a non-discriminatory and non-arbitrary way. Here, Plaintiff's license was suspended based on a void child support designation, imposed without notice, ADA accommodations, or an opportunity to contest the designation. As in *Schware*, the state cannot rely on stale, untested, or unreviewable administrative determinations to impose career-ending sanctions without due process. The Court in *Schware* emphasized that professional licensure is not a matter of state grace but is protected by the Due Process Clause of the Fourteenth Amendment.

**II. BACKGROUND**

Plaintiff is a full practice authority licensed advanced practice nurse whose professional licenses were suspended without notice or hearing in alleged relation to delinquent child support obligations. However, the alleged Title IV-D enforcement actions were unauthorized, fraudulent, and based on false representations to federal agencies. Plaintiff was awarded sole legal custody in 2012 (See *Exhibit* 3) and has never had a valid support order against her. The child's certified birth certificate lists Peter J. Allsot as the legal and presumed father (See *Exhibit* 2), and he has never been removed by court order. Despite this, Illinois HFS and IDFPR triggered federal tax refund seizures and license suspension proceedings without lawful grounds.

As a direct result of the Illinois license suspension, Plaintiff also lost eligibility to participate in federal healthcare programs such as Medicare and Medicaid, which comprised the vast majority of her patient base. Her Florida license was subsequently suspended based on reciprocal enforcement mechanisms, compounding her inability to practice across state lines or maintain employment in the telehealth and federally funded healthcare sectors. Furthermore, Plaintiff was recently forced to renew her DEA license at a cost of $888, despite being unable to lawfully practice, and has now been issued a demand for repayment of $14,130.36 by a telehealth platform (Grow Therapy) (See *Exhibit* 4) that asserts she unknowingly rendered services during her suspension due to lack of notice or opportunity to rectify the situation.

This cross-jurisdictional deprivation of rights underscores the interstate impact of Illinois' unconstitutional actions and triggers substantial federal interests in safeguarding due process, equal protection, and the right to earn a livelihood without arbitrary or retaliatory state interference.

**III. STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. All well-pleaded factual allegations must be taken as true and viewed in the light most favorable to the plaintiff. Dismissal is inappropriate if the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction. The plaintiff bears the burden of establishing jurisdiction, but when constitutional claims are at stake, jurisdiction must be broadly construed.

Where state remedies exist only in theory but are obstructed in practice due to denial of accommodations or failure to respond, the Due Process Clause is violated. See *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) ("The constitutional guarantee of due process demands more than mere paper procedures when access to those processes is effectively denied.").

When a litigant raises federal constitutional or statutory claims, federal courts have jurisdiction to hear those claims under 28 U.S.C. § 1331, regardless of whether state administrative remedies exist. See *Patel v. Board of Education*, 803 F.3d 667, 671 (7th Cir. 2015) ("When a plaintiff asserts a federal claim, the district court has jurisdiction to hear it."). Where state processes are unavailable, ineffective, or constitutionally inadequate—such as when ADA accommodations are denied, appeals are blocked, or notice is absent—federal courts must intervene to enforce constitutional rights[1]

---

- [1] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005): "Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them."
- *Mitchum v. Foster*, 407 U.S. 225, 242 (1972): § 1983 "was enacted to provide a uniquely federal remedy against incursions under the claimed authority of state law."

IV. ARGUMENT

**A. Rooker-Feldman Does Not Apply To This Case.**

Rooker-Feldman does not apply because Plaintiff is not challenging a state court judgment. Plaintiff raises independent federal claims for constitutional and statutory violations arising from the administration of federally regulated Title IV-D child support programs. Title IV-D is governed by federal law, and its enforcement must comply with federal due process, ADA, and equal protection guarantees. The actions Plaintiff challenges—license suspension, ADA denial, and Treasury offsets, were imposed by administrative agencies, not state court judgment, and are therefore justiciable in federal court.

**B. The Younger Abstention Doctrine Does Not Apply To This Case.**

Defendants invoke *Younger v. Harris*, 401 U.S. 37 (1971), but abstention is not warranted. There is no ongoing state court proceeding involving Plaintiff. The Illinois Appellate Court dismissed Plaintiff's appeal, and the Illinois Supreme Court declined to intervene. This litigation is not an attempt to enjoin or interfere with state court action—it seeks prospective relief for independent federal constitutional violations arising from unlawful administrative actions and ADA noncompliance.

As clarified in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), *Younger* abstention applies only to (1) ongoing criminal prosecutions, (2) quasi-criminal enforcement proceedings, or (3) civil proceedings that are integral to a state court's judicial function. None of those categories apply here. Moreover, Plaintiff lacked any meaningful opportunity to raise constitutional claims in the state system, due to denial of ADA accommodations, appellate

record obstruction, and refusal to docket or address key pleadings. Furthermore, Federal courts have a duty to review independent claims of ADA violations and constitutional injury under § 1983, even when they relate to state administrative enforcement.

Even if there was an ongoing state proceeding, under *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) still allows § 1983 relief when state processes are inadequate or unavailable.

**C. The Domestic Relations Exceptions Does Not Apply To This Case.**

While Defendants emphasize the state's interest in domestic relations, this interest is limited by the fundamental requirement of procedural fairness and adherence to constitutional standards. The state possesses no legitimate interest in enforcing orders obtained through fraud, bias, and violations of due process. Indeed, the Supreme Court has explicitly noted that abstention is inappropriate where "there is no potential state forum in which [federal] constitutional claims can be raised." *(See Moore v. Sims, 442 U.S. 415, 430 (1979).)* Plaintiff has thoroughly alleged, and documented, that the Illinois state forum is structurally inadequate to address her federal constitutional claims due to systemic obstruction, bias, and fraud.

Importantly, Plaintiff sought relief in federal court only after exhausting all reasonable avenues for state court relief, demonstrating respect for state processes. She diligently attempted appeals and repeatedly sought correction within the Illinois judicial system, only to face systematic obstruction and deliberate denial of access to justice. Thus, her resort to federal court is not premature or an attempt to bypass state remedies, but rather a necessary measure to vindicate rights systematically violated by the state actors. Federal jurisdiction here respects the

principles underlying Younger by ensuring enforcement of constitutional protections that state courts themselves have proven structurally unwilling or unable to uphold.

**D. Eleventh Amendment Immunity Does Not Bar This Action**

Defendants are sued for ongoing violations of federal law. Under *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiff may seek injunctive relief against state officials in their official capacities to stop continuing constitutional violations. Plaintiff seeks prospective relief—including license reinstatement and declaratory relief—not damages for past conduct. To the extent Plaintiff referenced ADA status and retaliation (Complaint, ¶10), Plaintiff preserves her right to assert Title II claims under 42 U.S.C. § 12132 as discovery develops and upon amendment if necessary.

Attorney General Kwame Raoul is named in his official capacity due to his constitutional role as Illinois' chief legal officer. Plaintiff notified the Attorney General's office in 2021 of ongoing ADA and due process violations. Rather than investigate or intervene, his office, specifically the Civil Rights Bureau, now defends the same actors Plaintiff reported. Under *Gentry v. Duckworth*, 65 F.3d 555 (7th Cir. 1995), state officials who fail to stop known constitutional violations may be held liable under § 1983. Furthermore, Plaintiff seeks only prospective relief, making the official capacity claim proper under *Ex parte Young*, 209 U.S. 123 (1908).

**E. Plaintiff States Valid Due Process Claims Under the Fourteenth Amendment**

Defendants suspended Plaintiff's licenses, seized tax refunds, and triggered Treasury offsets without notice, hearing, or opportunity to be heard. This violates procedural due process

as established in *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950), *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

**F. Plaintiff Alleges Excessive Fines Under the Eighth Amendment**

The $4,275.60 allegedly owed is dwarfed by the $6,209 seized in 2023 and an additional offset in 2024, all without valid legal basis. Such overcollection is punitive and violates the Excessive Fines Clause as applied in *Timbs v. Indiana*, 139 S. Ct. 682 (2019).

The seizure of over $6,000 against an alleged debt of $4,275.60 constitutes a disproportionate and punitive financial penalty. The Excessive Fines Clause of the Eighth Amendment applies to civil penalties when they are grossly disproportionate to the gravity of the offense or imposed without adjudication. See *Austin v. United States*, 509 U.S. 602, 622 (1993).

**G. No Valid Child Support Order Exists—Case is Non-Title IV-D**

The Cook County court record shows Plaintiff has sole custody and was never subject to a valid support order (See *Exhibit* 5). The child's certified birth certificate lists Peter J. Allsot as the legal father. Defendants misrepresented this to federal agencies to unlawfully invoke Title IV-D mechanisms. Cook County Courts unlawfully invoked and enforced Title IV-D child support mechanisms in a proceeding that never qualified for federal enforcement under Title IV-D of the Social Security Act (42 U.S.C. §§ 651–669). The support and custody orders entered were captioned "In the Marriage of" despite the undisputed fact that Plaintiff was never married to Defendant Naseem Latif. At the time of B.P.L.A.'s conception and birth, Plaintiff was legally married to Peter J. Allsot, who remains listed as the legal father on the child's certified birth certificate, as acknowledged in Plaintiff's filings and records produced to the Cook County court

system. Despite Plaintiff's objections and her repeated clarifications to the state courts, these facts were ignored. No paternity action was adjudicated under the Illinois Parentage Act. There was no legal finding of parentage, no Title IV-D application, and no court order establishing Latif's legal status as a parent. Nonetheless, Defendants wrongfully processed the matter through child support enforcement channels, including improper contempt proceedings, license suspensions, and federal enforcement reporting, under the false legal framework of a Title IV-D case. While the court entered a finding of parentage in 2011, the case was designated as 'Non-Title IV-D' and was never converted into a federally enforceable support case. Plaintiff never submitted a Title IV-D application, nor was the case referred through Child Support Services. Additionally, Defendant Latif repeatedly refused to place his name on the birth certificate, requiring a court order to compel such action. Under the Illinois Parentage Act, and consistent with Illinois Department of Public Health procedures, these omissions reflect a failure to complete the necessary statutory steps to become the legal father. As such, while a parentage order may exist, its procedural foundation remains suspect and insufficient to justify subsequent federal enforcement actions under Title IV-D. This distinction is critical in evaluating the legitimacy of the enforcement measures taken against Plaintiff. This misuse constitutes more than procedural error; it reflects a fraudulent assertion of federal jurisdiction to gain access to federal funding and enforcement support through Illinois's IV-D program. Under 42 U.S.C. § 654 and related regulations, state actors must certify that a case meets federal Title IV-D criteria in order to seek federal reimbursement. When judicial officers and attorneys knowingly enforce a nonexistent support order under false pretenses, this conduct implicates the False Claims Act (31 U.S.C. §§ 3729–3733) and raises the possibility of qui tam whistleblower liability for submitting or facilitating false claims for federal funds. Moreover, these actions violated Plaintiff's

substantive due process rights by depriving her of custody and property rights (including her professional licensure) based on a fabricated legal foundation. This conduct also violates the Supremacy Clause of the United States Constitution (Article VI, Clause 2), which prohibits state actors from enforcing state-created obligations that conflict with or improperly invoke federal law. By exploiting Title IV-D to justify unconstitutional actions, Defendants operated ultra vires—beyond the scope of lawful state or federal authority—and stripped Plaintiff of her rights without legal process or statutory basis. This sequence of events reflects a stunning abuse of both state and federal enforcement authority. Title IV-D of the Social Security Act (42 U.S.C. §§ 651–669) may only be applied where a valid support obligation exists, and where federal reimbursement is properly triggered. Here, no lawful modification of the support order ever occurred, yet Title IV-D enforcement against the lawful custodial parent, in direct contradiction to the existing order. These actions constitute:

- A substantive due process violation, as they deprived Plaintiff of custody and support without legal justification;

- A violation of equal protection, by reversing support obligations based on gender and favoritism;

- A Supremacy Clause violation, by enforcing federal statutes contrary to federal law; • And economic harm actionable under § 1983, the False Claims Act, and VAWA, given that the improper use of IV-D mechanisms deprived Plaintiff of federal program access, licensure, and income while favoring an unadjudicated non-parent. This pattern also demonstrates that Plaintiff—not Latif—was the party entitled to enforcement protection under Title IV-D, had such enforcement been lawfully invoked. Instead, the court and its

appointed agents used the program as a weapon of coercion and retaliation, further emphasizing the systemic gender-based discrimination and unconstitutional abuse of federal law. This Court should therefore recognize not only that Plaintiff's custody and support rights remain intact under state law, but that the ongoing harm she suffered stems directly from fraudulent state interference with federal regulatory systems, placing this case squarely within the jurisdiction and remedial authority of the federal court. Accordingly, Plaintiff's Title IV-D-related allegations provide a second, independent basis for federal jurisdiction. This case is not merely about family court error—it is about state actors misappropriating federal enforcement systems to execute unlawful deprivations under the color of law. These violations are actionable under 42 U.S.C. § 1983, the False Claims Act, and constitutional protections grounded in substantive due process, equal protection, and the Supremacy Clause.

**H. Defendant Mueller is Properly Named and Factually Implicated**

Defendant Heidi Mueller, in her official capacity as Director of the Illinois Department of Children and Family Services (IDCFS), is properly named in this action. Plaintiff's Complaint (see ¶6(b)) explicitly identifies IDCFS as a Title IV-D enforcement agency, responsible for data collection and interagency cooperation under Illinois law. Plaintiff further alleged that she communicated with both HFS and DCFS regarding the improper child support designation and license suspension (see Exhibit 1).

Plaintiff's Exhibits confirm that DCFS was among the agencies she contacted to contest the legitimacy of the underlying case and ADA violations. These communications and omissions support a claim under § 1983 for either direct participation or failure to intervene in ongoing

constitutional violations. Under *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000), and *Dennis v. Sparks*, 449 U.S. 24 (1980), such participation is sufficient to defeat a motion to dismiss.

Furthermore, Plaintiff seeks only prospective injunctive and declaratory relief against Mueller, not monetary damages. Therefore, sovereign immunity does not apply. *Ex parte Young*, 209 U.S. 123 (1908); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). Plaintiff has pled a continuing violation and remains subject to ongoing harm, making dismissal inappropriate.

**I. Treasury Seizures Establish Ongoing Harm and Support Injunctive Relief**

On July 14, 2023, Plaintiff's $6,209 tax refund was seized by the U.S. Treasury based on State certification. A second seizure occurred in 2024. These takings occurred without legal authority, violate the Fifth and Fourteenth Amendments, and establish irreparable harm. Plaintiff has requested written confirmation and will supplement this record upon receipt. (See *Exhibit* 6).

**J. DOJ Memo Supports Plaintiff's Claims**

Plaintiff incorporates the U.S. Department of Justice's April 20, 2023 Dear Colleague Letter, which identifies seven constitutional violations arising from unjust fines, fees, and license suspensions. Plaintiff's case is a textbook example of such abuse. (See *Exhibit* 7).

**K. The Court Must Independently Interpret Federal Law, Agency Deference Is No Longer Permitted**

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. \_\_\_ (2024), the Supreme Court explicitly overruled *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), eliminating judicial deference to agency interpretations of ambiguous statutes. Under *Loper Bright*, federal courts must exercise independent judgment in interpreting legal provisions, including those arising under the Administrative Procedure Act (APA) and Title IV-D of the Social Security Act.

Accordingly, any claim by Defendants, such as IDFPR, IDHFS, or DCFS—that their actions were justified by their internal interpretations of licensing statutes or Title IV-D enforcement policy cannot be granted deference. This Court must independently assess whether those actions were lawful, constitutional, and authorized under federal law, including the ADA and Due Process Clause. Plaintiff's claims fall squarely within this requirement, as they involve misapplication of federal authority, denial of statutory rights, and unconstitutional enforcement actions under the guise of administrative discretion.

**L. Plaintiff Continues to Suffer Ongoing Harm Warranting Prospective Relief**

The suspension of Plaintiff's Illinois license has resulted in severe, ongoing harm across multiple jurisdictions**.** As a direct consequence, Plaintiff's Florida medical license has been suspended in reliance on the Illinois action. Additionally, Plaintiff has been disqualified from participating in federal health care programs, including Medicare and Medicaid. These cascading administrative consequences—initiated without notice, hearing, ADA accommodations, or valid legal authority, have denied Plaintiff access to public programs and interstate professional opportunities, violating her due process and equal protection rights under the Fourteenth Amendment, and creating ongoing disability-based discrimination actionable under Title II of the

ADA. Plaintiff's harm is not speculative—it is real, current, and caused by the continuing inaction of the Defendants named herein.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss and allow Plaintiff's claims to proceed. In the alternative, Plaintiff requests leave to amend under Rule 15(a) to address any deficiencies identified by the Court.

This case presents ongoing harm and federal statutory violations that warrant full judicial review, not premature dismissal on procedural grounds. Plaintiff respectfully reserves the right to seek leave to file additional supplemental sur-replies should further Defendants raise new arguments, misrepresentations, or defenses not previously addressed. Plaintiff also notes that any remaining rebuttals to late or forthcoming replies may be consolidated in the interest of judicial economy, procedural efficiency, and clarity of the record.

April 14, 2025

Respectfully submitted,

/s/ Kimberly Lopez
*Pro Se* Plaintiff
16036 84th Place
Tinley Park, IL 60487
kslopez777@gmail.com
(708) 983-3934

## EXHIBITS

Exhibit 1 – Email Chain re: Lack of Notice

Exhibit 2 – Certified Birth Certificate (Peter J. Allsot listed as father) already on record sealed

Exhibit 3 – 2012 Sole Custody Order

Exhibit 4 - Demand for Repayment from Grow Therapy

Exhibit 5 – Child Support Orders

Exhibit 6 – 2024 Treasury Offset Letter

Exhibit 7 – DOJ Dear Colleague Letter (April 2023)

Exhibit 8 - IDHFS Policy on Administrative Orders