**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KIMBERLY LOPEZ, )
)
    Plaintiff, )    No. 25 C 00457
)
    v. )    Judge John J. Tharp, Jr.
)
ILLINOIS DEPARTMENT OF )
HEALTHCARE AND FAMILY )
SERVICES, *et. al.*, )
)
    Defendants. )
)

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case arises from a prolonged state court custody dispute between plaintiff Kimberly Lopez and Nassim Latif. Lopez has refused to pay Latif court-ordered child support since 2023. Because of that delinquency, the state of Illinois suspended her professional nursing licenses indefinitely. Lopez, proceeding *pro se*, brings this action against the Illinois Department of Healthcare and Family Services (IDHFS), the Illinois Department of Financial and Professional Regulation (IDFPR), the Illinois Department of Children and Family Services (IDCFS), and several state officials in their official capacities. She alleges various constitutional violations arising out of the state proceedings. Most of her theories are underdeveloped, beyond this Court's jurisdiction, and/or barred by the Eleventh Amendment. She does raise one issue this Court may properly consider: the defendants' purported failure to provide adequate notice and opportunity for a hearing before revoking her professional licenses. However, Lopez has failed to state a plausible claim for relief under that theory. As such, the defendants' motions to dismiss, [16], [17], [78], [79], are granted.

**BACKGROUND**

Since 2012, Kimberly Lopez has been embroiled in a state court dispute over the parentage and custody of her minor child Bella. An exhaustive account of those proceedings is unnecessary. The events precipitating the present action began in 2023, when Bella's father, Nassim Latif, testified that the child had been living with him full-time for several years and that Lopez had not contributed to payment for any of her expenses. Upon finding that Lopez's monthly income was triple that of Latif, the Circuit Court of Cook County ordered that Lopez pay Latif $1,018 per month in child support and reimburse him for 75% of Bella's direct expenses. Lopez failed to make those payments. A show cause hearing regarding her delinquency was held in April 2024. The court found that Lopez had no legally sufficient reason for failing to pay and adjudged her to be in civil contempt. The court further ordered that she be taken into the custody of the Cook County Sherrif, setting a purge amount of $3,500. Lopez appealed the order to the Illinois Appellate Court, which stayed her commitment on the condition that she "timely file a record on appeal by July 17, 2024." When Lopez did not comply, the court dismissed the appeal for failure to prosecute.

Lopez faced other consequences as well. In Illinois, failing to pay child support can trigger the revocation of state-issued professional licenses. The process is two-fold. If the Illinois Department of Healthcare and Family Services (IDHFS) decides to take action, it must first notify the obligor-parent of the past due amount and their right to a hearing to contest the obligation. If the obligor-parent requests a hearing within 15 days, enforcement proceedings are stayed. If not, IDHFS certifies the unpaid amount to the Illinois Department of Financial and Professional Regulation (IDFPR). 305 ILCS 5/10-17.6; 89 Ill. Admin. Code § 160.70(n). IDFPR must then,

"without further process or hearings," revoke any license that the obligor-parent holds. 20 ILCS 2105/2105-15(a)(5).

Lopez works as a certified nurse practitioner. She claims that, on or around December 19, 2024, IDFPR notified her via email that it had indefinitely suspended her licenses. She further claims that she did not receive any notice from IDHFS of the unpaid obligation or her right to a hearing before that date. As a result of the revocation, Lopez has been unable to properly care for her patients, participate in federal reimbursement programs, and maintain her livelihood.

## DISCUSSION

### I.     Lopez's Claims

Before proceeding further, it is important to note Lopez's status as a *pro se* litigant. Courts generally hold *pro se* pleadings to a less stringent standard than pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even so, a court should never "become an advocate," accept wholly unsupported allegations, or develop unraised issues on a litigant's behalf. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

With that in mind, the Court turns to the constitutional violations that Lopez asserts in her complaint. To start, she argues that the defendants violated the Due Process Clause of the Fourteenth Amendment by revoking her professional licenses without notice or opportunity for a hearing. That theory is relatively straightforward.[1] So too is the relief that Lopez requests to remedy that injury. She seeks (1) a declaratory judgment that the defendants violated her

---

[1] Lopez also claims a violation of the Equal Protection Clause because the defendants revoked her licenses "without valid certification or notice, while others similarly situated received proper procedural safeguards." Compl. ¶ 23, ECF No. 1. Because that allegation simply rearticulates the due process violation, the Court does not consider it a separate theory of recovery.

procedural due process rights, (2) an injunction requiring them to reinstate her licenses,[2] and (3) an award of compensatory damages, punitive damages, and attorney's fees.[3] She brings her claims pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983, 1988.

The rest of the complaint, however, is somewhat convoluted. Lopez spends a considerable amount of time insisting that she "has no valid child support order against her and is not subject to any legal obligation to pay child support under Illinois law." Compl. ¶ 9. She proffers a variety of arguments to support that contention, attacking the legibility of the judge's signature on the orders, the court's failure to join her husband in the proceedings, and the applicability of Title IV-D to the state custody case.[4] Given Lopez's emphasis on those arguments throughout her pleadings, the defendants posit that the "true nature" of her lawsuit is not to vindicate any constitutional violation, but rather to "persuade this Court to vacate the Cook County orders to relieve her of the consequences of her actions." IDHFS Reply 3, ECF No. 88.

---

[2] The Court notes that, even were it to decide all substantive issues in Lopez's favor, it would still decline to order a direct reinstatement of her licenses. Generally, the appropriate remedy for a procedural due process violation is more process. *See Evers v. Astrue*, 536 F.3d 651, 660 (7th Cir. 2008) (describing "the remedies available for a procedural due-process violation" as court-ordered "notice and hearing"). The Court therefore construes her request for injunctive relief as a request for proper notice and hearing on the certification of her overdue child support obligation.

[3] As a pro se litigant, Lopez cannot receive an award of attorney's fees even if she prevailed on her claims; a pro se litigant who is not a lawyer is not entitled to attorney's fees in the context of 42 U.S.C. § 1988. *Smith v. De Bartoli*, 769 F.2d 451, 453 (7th Cir.1985); *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 28, 115 N.E.3d 923, 930 ("law firm was proceeding *pro se* [and] the firm was therefore not entitled to an award of attorney fees for the services those lawyers performed in prosecuting the law firm's claim").

[4] Title IV-D of the Social Security Act (also known as the Child Support and Establishment of Paternity Act) appropriates federal funds to states for the purpose of enforcing support obligations, locating noncustodial parents, establishing paternity, and obtaining child and spousal support. *See* 42 U.S.C. § 651 *et seq.*

To be clear, this Court will not entertain any argument implying that the state court judgments are void: doing so would stretch the limits of federal jurisdiction past the breaking point and violate foundational principles of comity. That said, Lopez's attacks on the state court orders do not provide an independent basis for any relief requested; rather, they are merely ancillary to the alleged violation of her procedural due process rights. Not surprisingly, the hodge-podge of other theories she offers in support of her claim is insubstantial. Her invocation of other legal theories is essentially undeveloped, and for these reasons the discussion below focuses on the defendants' arguments for dismissal only as applied to Lopez's procedural due process claim.

## II.      Subject Matter Jurisdiction

In the face of a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that the court has the authority to adjudicate the case before it. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). When determining whether jurisdictional requirements have been met, the court must "accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

### A.      Jurisdiction and Abstention

The defendants argue that the Court must decline to hear this case pursuant to the *Rooker-Feldman* doctrine, *Younger* abstention, and the domestic relations exception to federal jurisdiction. Those arguments are unconvincing. The Court considers each in turn.

### 1.      The *Rooker-Feldman* Doctrine

Title 28 U.S.C. § 2757(a) vests the Supreme Court with exclusive appellate jurisdiction over state court judgments. If a state court litigant is unhappy with the outcome of his case, he must appeal through the state court system; if unsuccessful in the state courts, a litigant may then

petition for review by the United States Supreme Court, but he may not circumvent that process by filing a direct challenge to the state court judgment in federal district court. If he tries to do so, *Rooker-Feldman* bars the district court from exercising jurisdiction over his case. The Supreme Court has cautioned that the doctrine "is not triggered simply by the entry of judgment in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

To the extent that Lopez asks this Court to void any state court judgment, the *Rooker-Feldman* doctrine unquestionably bars jurisdiction. However, it does not bar this Court from considering Lopez's procedural due process claim. To start, the revocation of Lopez's licenses was effected by agency action, not court order. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997) ("If the *Rooker–Feldman* doctrine is to be extended to administrative judgments, it will have to be done by the Court that created it."); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004) ("[The doctrine] does not preclude federal district court review of executive action, including determinations made by a state administrative agency.") (citation omitted); *Narey v. Dean*, 32 F.3d 1521, 1525 (11th Cir.1994) ("[T]he *Rooker-Feldman* doctrine . . . applies only to state court decisions, not to state administrative decisions.").

Furthermore, the defendants advocate for the doctrine's application using the wrong standard. They argue that the claim stems from enforcement of the child support order, rendering it "inextricably intertwined" with a state court judgment. But in a recent decision, the Seventh Circuit rejected the "inextricably intertwined" test as impermissibly broad. The court explained that the "core focus" of the *Rooker-Feldman* inquiry "is on *what* the plaintiff asks the federal court

to do." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 792 (7th Cir. 2024) (opinion of Kirsch, J.) (emphasis in original). The doctrine only bars district court jurisdiction where judgment in the plaintiff's favor would "'overturn' or 'undo' the state court judgment." *Id.* (citation omitted). Here, Lopez's failure to comply with state court orders triggered the revocation of her professional licenses. But it does not follow that this Court would invalidate the precipitating orders if it found that a due process violation occurred during the revocation itself. As such, the *Rooker-Feldman* doctrine does not bar this Court from considering the claim.

### 2. *Younger* Abstention

The defendants also advocate for dismissal pursuant to the doctrine of *Younger* abstention, which "requires federal courts to abstain from exercising jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). Abstention is only proper where there is an ongoing state judicial proceeding that implicates important state interests and provides an opportunity to raise constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432 (1982). Additionally, the underlying state proceeding must be (1) a criminal prosecution, (2) a civil enforcement proceeding akin to a criminal prosecution, or (3) a civil proceeding that implicates a state's interests in enforcing the orders of its courts. *New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

Here, the defendants focus on the state's civil contempt order against Lopez as a basis for abstention. Civil contempt falls into the last category of proceedings to which *Younger* applies. *See Juidice v. Vail*, 430 U.S. 327, 336 n. 12 (1977) ("[C]ontempt . . . stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory."). The contempt proceedings against Lopez, however, are not ongoing. The state appellate court dismissed Lopez's

7

appeal of the contempt order, and the defendants do not point to any other action actively pending before a state tribunal. Instead, they note that the state proceedings are likely to persist "so long as [Lopez] owes child support or challenges a child support order." Raoul Mot. to Dismiss 5, ECF No. 18. But the mere potential for future proceedings does not trigger *Younger* abstention. *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous.") (emphasis in original).

Although the defendants do not raise the issue, state-initiated administrative proceedings—like license revocations—can also raise the specter of *Younger* abstention. *See, e.g.*, *Green v. Benden,* 281 F.3d 661, 666 (7th Cir. 2002) (IDFPR suspension of psychologist license); *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998) (state board suspension of nursing license). Indeed, because Lopez's due process claim is confined to the facts of the license revocation process—and has nothing to do with the civil contempt order at all—the case for *Younger* abstention might be stronger if predicated on the former, rather than the later. However, as far as this Court is aware, IDFPR's suspension order is final. Lopez never initiated any administrative appeal or filed a challenge to the order in state court. Thus, just as there are no ongoing contempt proceedings, there are no ongoing proceedings with respect to the license revocation that would counsel abstention. *See Bolton v. Bryant*, 71 F. Supp. 3d 802, 814 (N.D. Ill. 2014) (no basis for *Younger* abstention where plaintiff did not seek administrative review).

### 3. The Domestic Relations Exception

Finally, the defendants argue that this Court lacks subject matter jurisdiction pursuant to the domestic relations exception to federal jurisdiction. That doctrine prohibits federal courts from adjudicating disputes brought under diversity jurisdiction in which the plaintiff seeks a remedy

that is typically only awarded by state courts, such as the annulment of a marriage or an award of child custody. *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). Because Lopez's due process claim plainly does not fall within that category, the doctrine is inapposite.

### 4.     Comity, Equity, and Federalism

Perhaps recognizing that none of the above doctrines apply, the defendants appeal to principals of "comity, equity, and federalism." It is true that, in some circumstances, federal courts must decline to exercise jurisdiction over claims that do not implicate any particular abstention doctrine to avoid committing impermissible intrusions into state affairs. In *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021), for example, the Seventh Circuit found that the district court properly declined to consider a plaintiff's claim that IDCFS violated his substantive due process right to familial association. Although no abstention doctrine was a "perfect fit," a favorable ruling for the plaintiff would have "provide[d] [him] with an offensive tool to take to state court" to challenge that court's suspension of his parenting time. *Id.* at 723. As such, adjudication of the claim "threaten[ed] interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.*

This Court acknowledges the importance of maintaining the proper balance between federal and state authority. It also recognizes that, in the process of raising her due process claim, Lopez has cast numerous unfounded and inactionable aspersions on the underlying custody proceedings. However, the difference between *Woodard* and this case is readily apparent: here, a finding for Lopez on the license revocation issue could not be used to dispute the state court's orders regarding custody, parentage, or Lopez's support obligations. Moreover, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water*

9

*Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Given this Court's "duty to take []" jurisdiction" where "it has by law jurisdiction," *NOPSI*, 491 U.S. at 358-59, it declines to abstain from adjudicating Lopez's procedural due process claim.

### B.       Sovereign Immunity

Having found the above jurisdictional and abstention doctrines inapplicable, the Court now turns to the defendants' sovereign immunity arguments.

### 1.       Damages

It is well established that the Eleventh Amendment prohibits damages suits against states in federal court, whether brought by their own citizens or citizens of other states. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Sovereign immunity may be waived by the state or abrogated by Congress, but neither has occurred here. And while § 1983 authorizes damages suits against state agents in their *individual* capacities, the right of action does not extend to state agencies or state employees acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, the Eleventh Amendment bars Lopez's claims for damages against all named defendants for the alleged violations of the Due Process Clause.

### 2.       Injunctive and Declaratory Relief

Whether the Eleventh Amendment prevents this Court from providing equitable and declaratory relief is a different question. The *Ex parte Young* exception permits suits for such relief against state employees in their official capacities so long as two conditions are met. First, the relief must be prospective in nature and issued to prevent ongoing violations of federal law. *Young*, 209 U.S. 123, 203 (1908). Second, the named state officials must bear legal responsibility for the alleged federal law violations. *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018).

10

Taking the second requirement first, Lopez names four state employees in their official capacities: Attorney General of Illinois, Kwame Raoul; IDFPR Director Camille Lindsay; IDFPR Secretary Mario Treto, Jr.; and IDCFS Director Heidi Mueller. Attorney General Raoul and Director Mueller argue that Lopez has failed to articulate any ground for involving them in this dispute. The Court agrees. Lopez posits that the Attorney General is a proper defendant because he is "Illinois' chief legal officer." Resp. 7, ECF No. 26. But bringing him into court on that basis alone "would extend *Ex parte Young* past its limits." *Doe*, 883 F.3d at 977 (rejecting the Attorney General's "broad authority to enforce criminal laws" as sufficient justification for naming him in a statutory challenge). Lopez also fails to demonstrate that Secretary Mueller of IDCFS is a proper defendant. IDHFS and IDFPR effected Lopez's license revocation; IDCFS played no role. Accordingly, Secretary Mueller, along with Attorney General Raoul, are dismissed from this action.

The Court now turns to the nature of the relief sought against the remaining defendants, the IDFPR officers and IDHFS.[5] The defendants assert that the single, past act of revoking Lopez's licenses has not produced an ongoing injury. Thus, any relief addressing that injury would be retrospective—not prospective, as *Ex parte Young* requires. That argument is not convincing. A

---

[5] The Court takes this opportunity to address two issues. First, Lopez did not submit a response to IDFPR's motion to dismiss. Normally, this would constitute waiver. But in light of the extensive overlap between defendants' arguments, and Lopez's *pro se* status, the Court declines to dismiss the IDFPR defendants on that ground and construes her response to IDHFS (ECF No. 86) as a response to IDFPR as well. Second, Lopez did not name any IDHFS officers in any capacity as defendants in her complaint. It is well-established that "a case may proceed under the *Young* exception only when a state official is sued in his official capacity." *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). IDHFS did not raise this deficiency in its motion to dismiss. *See* IDHFS Mot. to Dismiss 9-10, ECF No. 78. Because sovereign immunity is an affirmative defense that may be waived if not fully developed, *see Haven v. Polska*, 215 F.3d 727, 731 (7th Cir. 2000), the Court also declines to dismiss IDHFS as a defendant agency.

11

single past incident can give rise to ongoing constitutional harm. The Seventh Circuit's decision in *Sherwood v. Marchiori*, 76 F.4th 688 (7th Cir. 2023), is instructive. There, plaintiffs alleged that the Illinois Department of Employment Security (IDES) had violated their equal protection rights by using an arbitrary selection methodology to deny them unemployment benefits, and that it had violated their due process rights by failing to provide them with any pre- or post-deprivation hearing. The court found that the equal protection challenge could not proceed under *Ex parte Young* because the it "could not reasonably infer that IDES [was] still utilizing this methodology in violation of applicants' rights." *Id.* at 694. However, the plaintiffs' procedural due process claim could proceed. That violation was ongoing given "the sustained absence of any process [], along with plaintiffs' continued property interest in the underlying benefits." *Id.* at 696. The same reasoning applies here. Lopez claims that her licenses remain indefinitely suspended, and that the state has never provided any adequate process. Her claim for relief fits within the *Ex parte Young* exception.

### III.    Failure to State a Claim

Now that the Court has determined that it may adjudicate Lopez's due process claim, it considers whether that claim can survive a 12(b)(6) motion to dismiss.  At the pleading stage, a complaint need only contain a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), as well as "sufficient factual matter" to state a facially plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court should not accept a complaint's legal conclusions as true, it must assume the truth of all well-pled allegations and draw all reasonable inferences in the plaintiff's favor. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

A procedural due process claim "consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*,

12

598 U.S. 230, 236 (2023). Here, only the second element is in dispute. Before depriving any party of a protected property interest, the government must provide notice that "is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Lopez has failed to demonstrate that the defendants revoked her license without constitutionally adequate process. To start, her factual allegations strain plausibility. She insists that IDHFS never provided notice of its intent to certify her overdue support obligation to IDFPR. But that simply cannot be true: she attaches the notices to her complaint. The notices, dated October 20, 2024, apprise Lopez of her right to request a hearing within 15 days and explain that IDHFS will certify the overdue amount to IDFPR if no hearing is requested.[6] Lopez nevertheless insists that she "never received any notices from October 2024." Compl. ¶ 8. Perhaps she means that IDHFS never sent them pursuant to proscribed procedures, since she later acknowledges that she received the documents attached to her complaint "via email, which violates Illinois Supreme Court Rule 9, requiring notifications to comply with specific procedural safeguards." *Id.* But failure to comply with a state procedural rule does not amount to a violation of the Due Process Clause. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Here, receipt of actual notice "more than satisfied [Lopez's] due process rights." *See id.*

Even assuming, *arguendo*, that Lopez never received actual notice of her right to a pre-deprivation hearing, her complaint would still fail to state a procedural due process claim. Courts

---

[6] IDFPR suspended the licenses of December 19, 2024, well after the deadline for Lopez to request a hearing expired.

recognize that when a deprivation is "random and unauthorized" rather than "pursuant to an established state procedure," it is not always possible for the state to provide pre-deprivation process. *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804-05 (7th Cir. 2010) (citations modified). Under those circumstances, procedural due process is satisfied so long as the state "provides [a] meaningful post-deprivation remedy." *Id.* at 805. Here, the due process violation did not occur pursuant to "an established state procedure," as Illinois law requires IDHFS to provide obligor-parents with notice and an opportunity for a hearing. Thus, Lopez's claim can only proceed if no adequate post-deprivation remedies exist. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008).

Post-deprivation remedies did exist for Lopez. The Illinois Administrative Review Law provides for circuit court review of final administrative decisions so long as the complainant requests review within 35 days of the contested decision. 735 ILCS 5/3-101 to 103. Lopez also could have sought review through the common law writ of *certiorari* or petitioned for a writ of mandamus. The Seventh Circuit has found that each of these constitute adequate post-deprivation remedies. *See Michalowicz*, 528 F.3d at 536 (Administrative Review Law); *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (Administrative Review Law); *Holstein v. City of Chicago*, 29 F.3d 1145, 1148 (7th Cir. 1994) (writ of *certiorari*); *Cleven v. Soglin*, 903 F.3d 614, 617 (7th Cir. 2018) (writ of mandamus). Lopez does not seem to have considered these avenues for relief, and this Court "will not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003).

\* \* \*

14

Plaintiffs are ordinarily entitled to at least one chance to amend their complaints after a dismissal, unless amendment would be futile. *Zimmerman v. Bornick*, 25 F.4th 491, 493-94 (7th Cir. 2022). However, dismissal with prejudice is appropriate if the plaintiff has proceeded in bad faith or demonstrated any improper motive. The Court finds that to be the case here.

Although Lopez's complaint did not explicitly ask this Court to overturn any state court judgment, her insistence on the illegitimacy of the orders speaks for itself. So too does the fact that she made similar allegations in another lawsuit, which she filed in this district against various state court officials. *See Lopez v. Kubalanza et. al.*, No. 24 C 13340 (N.D. Ill. Aug. 11, 2025). Judge Kennelly dismissed that case on abstention grounds, finding that Lopez clearly "[sought] to undo or undercut her ongoing state child custody proceedings." *See* Order 29, ECF No. 142. The abstention analysis in this case differed on account of Lopez's procedural due process claim. However, the Court agrees with Judge Kennelly's sentiment. Lopez's federal lawsuits have now resulted in two considered opinions dismissing her efforts to avoid the consequences imposed by the state for refusing to comply with her child support obligations. A third bite at the apple is not warranted.

Date: April 8, 2026

John J. Tharp, Jr.
United States District Judge

15